Argued November 20, reversed December 30, 1974, reconsideration denied February 6, petition for review denied March 11, 1975

STATE OF OREGON, *Respondent, v.* GRANVEL DOCKERY EMBRY (No. C 74-01-0064 Cr), *Appellant.*

530 P2d 99

*Donald C. Walker,* Portland, argued the cause and filed the brief for appellant.

*Janet Metcalf,* Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and TANZER, Judges.

TANZER, J.

Defendant appeals from his conviction of sec-

ond degree assault. The offense was allegedly committed on April 16, 1973. A first indictment was returned on June 15, 1973, but was dismissed on August 14, 1973 when the complaining witness failed to appear for trial.

A second indictment was dismissed on January 9, 1974 on jurisdictional grounds and the present indictment was returned on January 10, 1974. Defendant moved to dismiss for the reason, among others, that he had been deprived of his right to a speedy trial. The motion was denied and the matter first came to trial on February 19, 1974.

Following presentation of the state's case and during direct examination of the first defense witness, the following colloquy took place:

"Q [Mr. Walker, defense counsel] Now you mentioned something about [Mr. Cahill's, the alleged victim] mannerism. Describe his mannerism. Was there anything hostile about it?

"MR. KOCH [prosecutor]: Objection, your Honor.

"THE COURT: Yes, objection sustained. I wouldn't say that that's relevant here.

"MR. WALKER: Only to show this man's propensity for hostility, your Honor. I think it's very important.

"THE COURT: If you are trying to show his character, you are entitled to show that, but mere words do not show a person's character.

"MR. WALKER: I wonder if I might—

"THE COURT: You may mention that if you wish, but other than that, I would have to disregard it.

"Q (By Mr. Walker) Now, Mr. Stone, other

than words, describe an incident when Mr. Cahill came there, and how he approached you?

"A He approached me and his voice—I don't know if it was the normal way, or if he was inebriated,—but his voice was hostile.

"Q Did you have a feeling—

"A I had a feeling he was going to hit me, and I never laid eyes on the man before,—

"MR. KOCH: Objection, your Honor.

"THE COURT: Objection sustained, and the jury instructed to disregard it.

"Evidence of what he feels is no evidence of turbulent character. I am sure you understand, counsel, turbulent character is more than mere words.

"MR. WALKER: All right.

"Q Now, Mr. Stone, other than mere words, describe the conduct of Mr. Cahill that caused you to feel that way. Was he standing, or sitting, or what?

"A Other than words, it's just a feeling a man has somebody is approaching you in the wrong way.

"MR. KOCH: Objection, your Honor.

"THE COURT: The objection must be sustained.

"Counsel, I would suggest you refrain from that kind of questioning, and conform to the Court's ruling, and I am sure you understand it.

"MR. WALKER: I am sure the witness has more testimony than that.

"THE COURT: He said not. Outside of words, he had a feeling, and that's not sufficient. He said that's all.

"MR. WALKER: May I ask if that's all?

"THE COURT: He just said that.

"Q (By Mr. Walker) Was there any overt action on his part that caused you to feel that way?

"A (Pause) Well, (pause) I don't know if I'm

allowed to say it or not, but I had the feeling the man is a 'psycho.'

"MR. KOCH: Objection, your Honor.

"THE COURT: Objection sustained. This man has no qualifications in that field.

"In any event, the jury must be instructed to disregard that.

"MR. KOCH: Your Honor, I have a motion."[1]

The trial judge and counsel then went into chambers and the state moved for mistrial. Defendant's attorney strenuously objected, arguing that the jury was not so "fragile" as to necessitate such an extreme remedy and pointing out the length of time and the number of hearings which had passed since defendant's original indictment. The court, however, granted the motion on the ground that the testimony elicited would be prejudicial to the state's case.

Defendant then moved for judgment of acquittal on the basis that any retrial would place him in double jeopardy. The motion was denied and a new trial was held on March 28, 1974. Defendant principally assigns as error, first, the denial of his motion to dismiss the indictment for lack of speedy trial and, second, the denial of his motion for judgment of acquittal on the basis of former jeopardy. Because we decide the case on double jeopardy grounds, we need not and do not reach the speedy trial question.

ORS 131.525 (2)(c) provides:

"A previous prosecution is not a bar to a subsequent prosecution when the previous prosecution

---

[1] The state has filed no additional transcript in opposition to the motion. Therefore we assume from the record before us that there were no aggravating circumstances.

was properly terminated under any of the following circumstances:

"\* \* \* \* \*

"(2) The trial court finds that a termination, other than by judgment of acquittal, is necessary because:

"\* \* \* \* \*

"(c) Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the state \* \* \*"

■ The Double Jeopardy Clause of the Oregon Constitution, Art I, § 12 provides:

"No person shall be put in jeopardy twice for the same offence (sic) \* \* \*."

The Oregon Supreme Court has held that any unauthorized discharge of a jury is the equivalent of a prior acquittal, *State v. Chandler,* 128 Or 204, 274 P 303 (1929), and we have warned of danger of granting of a mistrial without the assent of the defendant, *State v. Bauer,* 16 Or App 443, 447, n. 2, 519 P2d 96 (1974), but that broad rule has not been specifically applied to facts similar to those at bar. While the state protection against double jeopardy differs radically from the federal in certain regards, *see State v. Brown,* 262 Or 442, 497 P2d 1191 (1972), we see no reason to construe it differently as it applies to this case.

■ The Fifth Amendment of the United States Constitution provides:

"No person shall \* \* \* be subject for the same offence to be twice put in jeopardy of life or limb \* \* \*."

The United States Supreme Court has long held that retrial is barred by the Double Jeopardy Clause if a mistrial has been declared without the defendant's con-

sent under circumstances in which the ends of justice do not present a "manifest necessity" for such action. *United States v. Jorn,* 400 US 470, 91 S Ct 547, 27 L Ed 2d 543 (1971); *United States v. Perez,* 22 US (9 Wheat.) 579, 6 L Ed 165 (1824). The constitutional rule and the language of ORS 131.525 (2)(c) are functionally equivalent statements of the same concept. The doctrine was originally stated by Justice Story in *Perez:*

> "We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes * * *." 22 US at 580.

■ The right of a defendant under the Double Jeopardy Clause to have his case decided by a jury which may be favorably disposed toward innocence is diligently protected. More recently, in *United States v. Jorn,* supra, the court stated:

> "* * * [E]ven in circumstances where the problem reflects error on the part of one counsel or the other, the trial judge must still take care to assure himself that the situation warrants action on his part foreclosing the defendant from a potentially favorable judgment by the tribunal.

> "* * * [T]he judge must bear in mind the potential risks of abuse by the defendant of society's unwillingness to unnecessarily subject him to repeated prosecutions. Yet, in the final analysis, the

judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." 400 US at 486.

■ A trial judge, then, is not to foreclose the defendant's option to go to the jury unless he reasonably concludes that the ends of public justice cannot be served by a continuation of the proceedings. It is impossible and undesirable to formulate mechanical rules by which to judge the propriety of declaring a mistrial under a given set of circumstances. Rather, each case must be evaluated on its own particular facts. *United States v. Jorn,* supra, 410 US at 464, 480, 485; *Illinois v. Somerville,* 410 US 458, 462, 93 S Ct 1066, 35 L Ed 2d 425 (1973). We must decide, therefore, whether, on the facts before him in this case, the trial judge properly concluded within the bounds of sound judicial discretion, that the ends of justice would not be served by a continuation of the proceedings.

■■ The granting of a mistrial is a drastic remedy to be avoided if possible, consistent with fairness. Thus we have consistently held that where a potentially prejudicial impropriety occurs in the course of trial, it is proper for the trial court, in its sound discretion, to take no action at all if it determines that the impropriety is not sufficiently prejudicial as to require the intervention of the judge, *see,* e.g., *State v. Williams,* 10 Or App 430, 500 P2d 494 (1972), or to take curative action in order to avoid the granting of a mistrial, *see,* e.g., *State v. Pool,* 11 Or App 55, 500 P2d 726, *rev den* (1972); *State v. Smith,* 4 Or App 261, 265-266, 478 P2d 417 (1970). We construe the constitutional standard of "manifest necessity" and the

statutory standard "impossible to proceed * * * without injustice" to require at the least that a trial not be terminated if any reasonable alternative action is possible under the facts of each case.

■ The objectionable testimony at bar is clearly inadmissible, but we do not believe it to be of such magnitude as to preclude a fair trial. A curative instruction would be sufficient to eliminate any prejudicial effect. We do not second-guess the trial court within its discretionary ambit, but we hold that the grant of a mistrial in this case was outside the constitutional bounds of discretion. It therefore denied to the defendant his right, as phrased in *Jorn*, "* * * to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate," and thus bars his retrial.[2]

■■ We emphasize that we do not now establish any mechanical rule to be applied in cases where a mistrial has been declared because of defense misconduct. The state is equally entitled to a fair trial. As previously stated, each case must be evaluated on its own facts and where those facts are such that a trial judge could reasonably conclude that the ends of justice would not be served by continuing, he may, in the proper exercise of discretion, grant a mistrial. *Cf. State v. Bishop*, 6 Wash App 146, 491 P2d 1359 (1971). As Mr. Justice Black stated in *Wade v. Hunter*, 336 US 684, 689, 69 S Ct 834, 93 L Ed 974 (1949), "* * * a defendant's val-

---

[2] Such a result is in accord with the majority of cases considering this question in similar factual situations. *See, e.g., Commonwealth ex rel Riddle v. Anderson*, 227 Pa Super 68, 323 A2d 115 (1974); *Espinoza v. District Court in and for County of Conejos*, 180 Colo 391, 506 P2d 131 (1973); *People v. Maguire*, 38 Mich App 576, 196 NW2d 880 (1972); *Scott v. Municipal Court*, 17 Cal App 3d 885, 95 Cal Rptr 460 (1971); *United States v. Witlow*, 110 F Supp 871 (DC Cir 1953).

ued right to have his trial completed by a particular tribunal must in some circumstances be subordinated to the public's interest in fair trials designed to end in just judgments." This, however, is not such a case and retrial, therefore, was barred by ORS 131.525 (2)(c) and the Double Jeopardy Clauses of the United States and Oregon Constitutions.

Reversed.