Argued and submitted December 12, 1980, affirmed May 18, reconsideration denied June 25, petition for review denied July 21, 1981 (291 Or 368)

# STATE OF OREGON,
### *Respondent,*

*v.*

# MICHAEL ARNOLD McFERRON,
### *Appellant.*

## (No. 19-176, CA 17216)

628 P2d 440

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

Defendant was tried and convicted of one count of assault in the third degree and three counts of assault in the second degree arising out of an automobile accident in which several persons were injured, allegedly due to the defendant's reckless driving. Midway through an earlier trial of the same charges the court excused a juror for bias. The court declared a mistrial when the prosecution refused to proceed with 11 jurors and refused to agree to accept a a ten-to-one verdict, as proposed by the defendant. Before being retried and convicted, defendant moved to dismiss the accusatory instrument on the ground of double jeopardy. Denial of that motion is the basis of this appeal.

The facts of the case as they relate to the issue before us are as follows: After voir dire, opening statements, a jury view and examination of witnesses for both the state and defendant, a juror contacted the clerk. The court, counsel and the juror retired for an *in camera* discussion in which the juror stated that he had been involved in an incident in which his own child had been injured by a reckless driver. He said that his feelings of "vengeance" would prevent his impartial consideration and would affect his ability to follow the court's instructions. He also said that he had intended to disclose those facts on voir dire examination, but had neglected to do so, although the court had questioned the jury panel as to circumstances affecting the ability of jurors to be fair.[1] The juror was dismissed. Defendant acknowledges that was proper.

Following the court's dismissal of the juror, defendant advised the court that he wished to proceed with the 11 remaining jurors, with concurrence of ten required to render a verdict. The prosecution refused, standing on the state's right to insist upon a 12-person jury. The court then declared a mistrial, *sua sponte,* relying on ORS

---

[1] The defendant stresses the fact that the juror said that he only recalled the incident after voir dire was completed. This is in direct conflict with his earlier statement that he had intended to volunteer the information during voir dire, but forgot to do so in the confusion of the questioning.

136.450[2] and on ORS 131.525.[3] The court pointed out that there was some question as to whether the juror had responded with the candor asked of him during voir dire. The court further stated that both the statute and the Oregon Constitution, as construed by the Oregon Supreme Court in *State ex rel Smith v. Sawyer,* 263 Or 136, 501 P2d 792 (1972), provide that the state need not proceed with less than 12 jurors.[4]

---

[2] ORS 136.450 provides:

"Except as otherwise provided, the verdict of a trial jury in a criminal action shall be by concurrence of at least 10 of 12 jurors except in a verdict for murder which shall be unanimous."

[3] ORS 131.525 provides, in pertinent part:

"A previous prosecution is not a bar to a subsequent prosecution when the previous prosecution was properly terminated under any of the following circumstances:

" * * * * *

"(2) The trial court finds that a termination other than by judgment of acquittal, is necessary because:

" * * * * *

"(e) False statements of a juror on voir dire prevent a fair trial * * * ."

[4] The trial court articulated the reasons for mistrial, as follows:

"I also should note we have spent sometime [sic] because quite frankly this is a rare occurrence that I excuse a juror. We have had inquiries or questions sometimes during the trial.

"In ORS 136.450, 'Except as otherwise provided, the verdict of a trial jury in a criminal action shall be by concurrence of at least 10 of 12 jurors except in a verdict for murder which shall be unanimous.'

"131.525 is double jeopardy and that contains a number of situations where previous prosecution is not a bar to subsequent prosecution, when there is a termination prior to acquittal in the jury trial.

"If the trial judge finds that a termination is necessary because it is physically impossible to proceed—I am paraphrasing—legal defect, prejudicial conduct, jury unable to agree upon a verdict, false statements of a juror on voir dire preventing a fair trial.

"We haven't gone over the questions and answers of Mr. Brandow, but there is at least some claim that his answers may not have been with the candor and fairness that I asked them to respond. Obviously, when we inquired separately of Mr. Brandow, he indicated he had forgotten, but there is still some question in the court's mind about that, particularly when both counsel questioning in that particular area, as well as all the other jurors' remarks.

"Secondly after reading State ex rel Smith vs. Sawyer, 263 Or 136, that is the mandamus case in Jackson or Josephine County wherein the State would not consent to less than the twelve.

Before being retried, defendant moved to dismiss the accusatory instrument on the grounds of former jeopardy. He acknowleged that the state has a right to a 12-person jury, but contended that jeopardy had already attached at the stage in the trial at which the juror was dismissed and that defendant's constitutional right to be free of double jeopardy is paramount. The trial court denied the motion to dismiss. It based its ruling on the holding in *Sawyer,* on its finding that the "dissension factor" (the allowable margin of disagreement) is reduced if it takes ten of 11 jurors instead of ten of 12 to arrive at a verdict, and on ORS 136.210(1), which requires consent of the parties in order to proceed with less than 12 jurors.[5] It concluded that the constitutional protections against double jeopardy were not violated by the declaration of mistrial. We affirm.

In this case, jeopardy attached in the first trial. The question before us is whether it bars the second trial. Both the Oregon and United States Constitutions provide that a defendant is not to be put twice in jeopardy for the same offense.[6] However, there can be a conflict between the rights of the defendant and the interest of the public in " * * * fair trials designed to end in just judgments * * * ," *Wade v. Hunter,* 336 US 684, 689, 69 S Ct 834, 93 L Ed 974 (1949), and the public interest in affording the prosecutor one full, fair opportunity to present his case can be the prevailing interest. *Arizona v. Washington,* 434 US 497, 98 S Ct 824, 54 L Ed 2d 717 (1978); *State v. Cole,* 286 Or 411, 595 P2d 466, *cert den* 444 US 968 (1979). Where a mistrial is declared without the defendant's concurrence, retrial

---

"I think based on the statute and the constitution, the State does have a right to have twelve jurors and in this case where it is necessary to excuse one, the State need not proceed with eleven jurors to make a decision."

[5] ORS 136.210(1) provides:

"Except as provided in subsection (2) of this section, in criminal cases the trial jury shall consist of 12 persons unless the parties consent to a less number. * * *"

[6] The Fifth Amendment of the United States Constitution provides: " * * * nor shall any person * * * be subject for the same offence to be twice put in jeopardy of life or limb * * * ," and was applied to the states through the Fourteenth Amendment in *Benton v. Maryland,* 395 US 784, 89 S Ct 2056, 23 L Ed 2d 707 (1969).

Article I, Section 12, Oregon Constition provides:

"No person shall be put in jeopardy twice, for the same offence * * * ."

will not be barred if the state can show that there was a "manifest necessity" for the termination of the trial before verdict. *Arizona v. Washington, supra; Illinois v. Summerville,* 410 US 458, 93 S Ct 1066, 35 L Ed 2d 425 (1975); *United States v. Perez,* 22 US (9 Wheat) 579 (1824); *State v. Cole, supra.*

The defendant first contends that although dismissal of the juror was proper, it does not fit within one of the five statutory exceptions to double jeopardy set forth in ORS 131.525(2). We do not agree.

■ Although the trial court did not specifically state that the order of mistrial was based on ORS 131.525(2)(e), it paraphrased the statute and stated that there was some question as to whether the juror had responded with the candor required of him on voir dire. The record supports the conclusion that the juror was dismissed pursuant to subsection (2)(e), because of a "false statement" which would prevent a fair trial. Specific questions were asked of the panel members as to their ability to be impartial. The juror failed to respond as requested and stated *in camera* that he meant to volunteer the information during voir dire. When questioned by the court and counsel, he stated that he did not feel that he could leave his "vengeance" out of the deliberations and that it would be extremely difficult to follow the judge's instructions. The defendant places much importance on the fact that there were no "false statements" actually made by the juror, but the distinction between a juror's coming forth with untruthful information and his failing to respond honestly to a direct question is not a valid one.[7]

■ Defendant not only contends that the result of the dismissal of the juror does not fall within the statutory exception to double jeopardy under ORS 131.525(2)(e), but, also, that when a mistrial is ordered without defendant's participation, particularly over his objection, the decision to terminate the trial must satisfy the "manifest necessity" test. Although the facts of this case present a question of

[7] A United States District Court has held that a Georgia trial court exercised sound judicial discretion when it dismissed a biased juror and declared a mistrial because the failure of the juror to respond affirmatively to questions put to the jury panel constituted a "false statement of a juror on voir dire which prevents a fair trial." *Jones v. Anderson,* 404 F Supp 182 (S.D. Ga 1974), *aff'd mem,* 522 F2d 181 (5th Cir 1974).

first impression in Oregon, we have previously construed the "manifest necessity" test (and ORS 135.525(2)) to require that a trial not be terminated prior to verdict if there is a reasonable alternative. *State v. Embry,* 19 Or App 934, 530 P2d 99, *rev den* (1975). Defendant argues that there was no "manifest necessity" for the mistrial, because the trial court had the alternative of requiring the state to proceed with the 11 remaining jurors. The trial court considered that alternative, but concluded that mistrial was necessary because the Oregon statutes and Constitution give the state the right to a jury of 12, and the state could not be required to proceed with fewer. Defendant does not contest the state's statutory right to a jury of 12 pursuant to ORS 136.210, but contends on appeal that the right is subordinate to his constitutional right to be free of double jeopardy.

In *State ex rel Smith v. Sawyer, supra,* it was contended that because he had constitutional authority to allow the accused to waive jury, the trial judge was not bound by ORS 136.210. The Supreme Court held that under the Oregon Constitution a trial judge cannot force the state to proceed with only six jurors whose verdict must be unanimous. The respondent in *Sawyer* argued that, since the Constitution permits the defendant to waive a jury trial, it permits him to waive his right to a jury of 12.[8] The Supreme Court ruled that the provision of ORS 136.210, requiring consent of the prosecution before a criminal case may be tried to a jury of less than 12 does not conflict with the Constitution. The Supreme Court reasoned that, when the voters amended Article I, Section 11 of the Constitution to allow ten jurors to render a verdict, a jury of 12 was obviously contemplated,[9] and that the Constitution was

---

[8] Article I, Section 11, Oregon Constitution provides:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * * provided, however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing; provided, however, that in the circuit court ten members of the jury may render a verdict of guilty or not guilty, * * * ."

[9] ORS 136.450 *(see* n 2, *supra)* was amended in 1973 to reflect the constitutional amendment and specifically requires a concurrence of at least ten *out of 12* jurors. (Former 136.610, amended Or Laws 1773, ch 836, § 241, renumbered 136.450.) *See also* Proposed Oregon Criminal Procedure Code, Final Draft and Report, Commentary 205, § 366 (1972).

amended with the intent that the state be able to obtain convictions more easily, since one or two jurors would no longer be able to prevent a verdict.[10] The court pointed out that in *Apodaca v. Oregon,* 406 US 404, 92 S Ct 1628, 32 L Ed 2d 184 (1972), the United States Supreme Court held that this provision for less that unanimous verdicts did not violate federal constitutional guarantees. *Sawyer* stands for the proposition that the accused, even with the consent of the court, cannot "thwart the will of the people" by causing the state to lose the advantage of a less than unanimous verdict. 263 Or at 139.

Although defendant attempts to distinguish *Sawyer* on the grounds that it deals with a six-member jury and a unanimous verdict, the rationale of the decision is equally applicable to this case. Under the constitutional construction applied by the Supreme Court in *Sawyer,* the defendant cannot force the state to forego the advantage of a verdict of ten out of 12 jurors.

In this case the juror was properly dismissed. Defendant desired to proceed with 11 jurors with agreement of only ten necessary to reach a verdict. The state insisted on its right to a 12-person jury.[11]

The Constitution of Oregon provides for juries of 12 members in criminal cases and requires the state to convince only ten of the 12 jurors of the guilt of a defendant in order to obtain a verdict of guilty. This is an advantage afforded the state over the earlier requirement of unanimous verdicts and does not violate rights guaranteed by the United States Constitution. ORS 136.210 requires consent of the state before a felony case may be tried to a jury of less than 12 and does not conflict with the Oregon Constitution. To require the state to proceed with only 11 jurors and

---

[10] The court cited sections from the Voter's Pamphlet, Special Election May 18, 1934, p 7, as evidence of the voter's intent in amending Article I, Section 11 of the Constitution to allow ten persons to render a verdict. *State ex rel Smith v. Sawyer, supra* at 139.

[11] The requirement of prosecutorial consent to trial before a jury of less than 12, even where the number of jurors is reduced after the trial has begun, has been held constitutional under the "manifest necessity" test in the federal system which requires a unanimous jury verdict. *Parker v. United States,* 507 F2d 587 (8th Cir), *cert den* (1974); *Patton v. United States,* 281 US 276, 50 S Ct 253, 74 L Ed 854, 70 ALR 263 (1930). There is even stronger reason for requiring the consent of the prosecutor under the Oregon Constitution which gives the state the advantage of a ten of 12 verdict.

still require that it convince ten jurors of defendant's guilt before they could return a guilty verdict would reduce the advantage given the state by the Constitution. The state need not relinquish that advantage and thereby create an added advantage for defendant merely because defendant insists on it. The public interest in giving the state a fair opportunity to present its case to a constitutionally-formed jury is of such importance that the inability to afford the state that right, as under the facts here, constitutes such a "manifest necessity" for the declaration of mistrial as to avoid the bar of double jeopardy.[12]

Affirmed.

---

[12] Appellate courts generally have deferred to the trial judge's exercise of discretion in the rejection of alternatives to 12-member juries. Schulhofer, Jeopardy and Mistrials, 125 U Pa L Rev 449, 476 (1977).