Argued and submitted December 17, 1986, reversed and remanded with instructions to quash writ of mandamus February 25, reconsideration denied May 15, petition for review denied June 16, 1987 (303 Or 534)

# STATE ex rel WARK,
*Respondent,*

*v.*

# FREERKSEN,
*Appellant.*

## (85-0429C; CA A36518)

733 P2d 100

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Stephen A. Houze, Portland, argued the cause for respondent. With him on the brief was John Henry Hingson III, Oregon City.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

Buttler, P. J., dissenting.

## ROSSMAN, J.

Defendant, a trial judge, appeals from a judgment of the circuit court ordering that a peremptory writ of mandamus issue commanding him to dismiss a criminal prosecution for driving under the influence of intoxicants pending against relator. Relator petitioned for the writ after the judge granted the state's motion for a mistrial at his trial and denied his subsequent motion to dismiss. The circuit court ordered the writ issued after concluding that further prosecution would violate relator's statutory and constitutional rights against twice being placed in jeopardy for the same offense. We reverse.

The trial judge declared a mistrial after relator's counsel proclaimed in the presence of the jury: "[T]he prosecution is hiding all the facts from the jury * * * and I'm trying to bring out the truth and nothing but the truth." Defense counsel made the statements while cross-examining the arresting law enforcement officer concerning relator's performance during a field sobriety test. The relevant portion of the record is set forth below.

"[Defense Counsel:] The prosecutor didn't ask you anything about what type of footwear Mr. Wark was wearing, did he?

"[The Prosecutor:] I'll object to that question. What I asked him or not is irrelevant. He can ask him what the . . .

"[The Court:] Sustained.

"[Defense Counsel:] Do you remember the prosecutor — I'm testing your memory now, sir — do you remember the prosecutor asking you on direct examination, in this courtroom, within the last 20 minutes, what type of footwear Mr. Wark was wearing?

"[The Prosecutor:] I'd ask a continuing objection to that.

"[Defense Counsel:] I'm only testing his memory.

"[The Prosecutor:] As to what he testified here, before?

"[The Court:] I'd sustain that objection.

"[Defense Counsel:] Is it not a fact that your police report indicates that Mr. Wark had 1 1/2-inch high heeled cowboy boots on?

"[The Witness:] Yes, sir.

"[Defense Counsel:] And the prosecutor here has had that report? You gave it up to him, right?

"[The Prosecutor:] Objection. That's irrelevant. How's he going to know what reports I've got?

"[The Court:] What would be the relevance of that?

"[Defense Counsel:] What I'm trying to do is to show that the prosecution is hiding all the facts from the jury, by the examination of this officer on direct; and I'm trying to bring out the whole truth and nothing but the truth, as he's taken an oath to tell in this courtroom.

"[The Prosecutor:] I have a motion for the Court.

"[The Court:] Take the jury out.

"* * * * *

"[The Prosecutor:] At this time, I would make a motion for a mistrial, based upon counsel's representation about what I'm trying to do and about what is going on in this case. I believe there's been irreparable damage that's been done to the State in this case. I don't think there's any curative instruction that the Court can give.

"[Defense Counsel:] I resist it. I don't think there's anything improper about what I've done.

"[The Court:] Play it back, Dan.

"* * * * *

"[The Court:] Do either of you wish to be heard further?

"* * * * *

"[The Court:] I'm going to grant the motion for mistrial. I am not going to assess any costs against the defendant, because I don't think that Mr. Hingson did it out of any malevolence. I think he did it out of — was trying extra hard for his client. But I am convinced that the State cannot get a fair trial if this case continues."

The trial judge first contends that mandamus is not a proper remedy, because relator could appeal if convicted. ORS 34.110 defines and limits the circuit court's constitutional power to issue writs of mandamus. It provides:

"The writ shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law."

Direct appeal in criminal cases generally is regarded as a "plain, speedy and adequate remedy in the ordinary course of

the law." *State ex rel Automotive Emporium v. Murchison,* 289 Or 265, 267, 611 P2d 1169 (1980).

■     However, we conclude that the prospect of being unconstitutionally put in jeopardy twice for the same offense constitutes a sufficient injury to justify mandamus. As stated in reference to the federal constitution in *Abney v. United States,* 431 US 651, 660, 97 S Ct 2034, 52 L Ed 2d 651 (1977):

> "[T]he rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence. * * * [T]he Double Jeopardy Clause protects an individual against more than being subject to double punishments. It is a guarantee against being twice put to *trial* for the same offense." (Emphasis in original.)

The Court's reasoning applies with equal force to the protection afforded by Article I, section 12, of the Oregon Constitution.

We turn, therefore, to whether the jeopardy that attached in the first trial bars a second trial. ORS 131.515(1) provides that "[n]o person shall be prosecuted twice for the same offense." ORS 131.525(1)(b)(C) provides, however, that a previous prosecution is not a bar to a subsequent prosecution if the trial court finds that terminating the first prosecution is "necessary" because "[p]rejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the state." Similarly, although both the Oregon and the United States Constitutions purport to prohibit placing a criminal defendant in jeopardy twice for the same offense,[1] it is well settled that neither bars a retrial if the state shows that there was a "manifest necessity" for terminating the defendant's first trial before the verdict. *Arizona v. Washington,* 434 US 497, 98 S Ct 824, 54 L Ed 2d 717 (1978); *State v. Cole,* 286 Or 411, 595 P2d 466, *cert den* 444 US 968 (1979); *State v. McFerron,* 52 Or App 325, 628 P2d 440 (1980), *rev den* 291 Or 368 (1981); *State v.*

---

[1] Article I, section 12, of the Oregon Constitution, provides: "No person shall be put in jeopardy twice for the same offence [*sic*]."

The Fifth Amendment provides: "No person shall * * * be twice put in jeopardy for life or limb * * *."

*Embry,* 19 Or App 934, 530 P2d 99 (1974), *rev den* (1975). Because the trial court is in the best position for making the required determination, both the statutory and constitutional standards are satisfied if the trial judge properly concludes within the bounds of sound judicial discretion that the ends of justice would not be served by continuing the proceedings. *Arizona v. Washington, supra,* 434 US at 514; *State v. Embry, supra.*

■     Relator first contends that the jeopardy that attached in the first trial bars a second trial because the state's motion was not preceded by a timely objection. We disagree. The state moved for a mistrial immediately after defense counsel made the remarks which the state claims were improper and prejudicial. It was not necessary, as relator contends, to move first to strike the remarks from the record.

Relator next contends that the remarks were not improper, because they were made in direct response to the trial judge's query concerning the relevance of the information defense counsel was attempting to elicit from the witness. He contends that defense counsel's comments were, at most, "more argument than [the trial judge] wanted" but that, if the remarks were inappropriate, the proper remedy would have been to instruct the jury to disregard it.

■     We conclude that defense counsel's remarks were not responsive to the trial judge's inquiry. Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. Counsel's statements that "the prosecution is hiding all the facts from the jury" and that he was trying to "bring out the whole truth" did not explain, as the trial judge requested that he do, how the information that he was attempting to elicit would make the existence of a fact of consequence to the determination of the case more or less probable.

Therefore, the dispositive issue becomes whether the trial judge's decision to terminate relator's trial because of defense counsel's improper statements was within the bounds of sound judicial discretion. The declaration of a mistrial over a defendant's objection is a drastic remedy and one which should be avoided, if possible. Accordingly, the trial judge

must have reasonably concluded that no reasonable alternative to termination existed that would have assured the state a fair trial or, in other words, that no curative instruction or other response by the judge would have removed all of the juror bias created by the improper conduct, or at least a sufficient amount of the juror bias to assure a fair trial.

The record shows that the trial judge carefully considered relator's interests before making his decision. He had the recording of defense counsel's remarks played back twice, heard argument from both counsel and recessed to consider the matter. He granted the mistrial only after concluding that the state could not get a fair trial if the proceeding continued.

Our duty is not simply to substitute our judgment for that of the trial judge, as the dissent seems to imply.[2] Under our judicial system, the trial judge's role is to act as the governor of the trial. The trial judge is in a far better position to determine whether a fair trial can be assured than we are. We have only a cold record to guide us. Obviously, a transcript of the trial proceedings is not much help in divulging the many nuances, such as the jury's reaction, which may have influenced the trial judge's decision.

■       Accordingly, we must quash the writ, unless we can say, as a matter of law, that some form of admonishment or curative instruction would have assured the state a fair trial in this case. The dissent suggests that defense counsel's comments may have been proper if they had been made during closing argument. However, that is not where they occurred. Rather, they were made during the presentation of a party's evidence. Because of that, we cannot say, as a matter of law, that those comments would not have unfairly tainted the jury's perception of the evidence as it was presented from that point on, even if there had been an admonishment or a curative instruction. Perhaps another judge may have decided the question differently, but we conclude that this trial judge's

---

[2] The dissent asserts that the trial judge's discretion in this case is "not so broad," because a mistrial was not granted on the ground of physical necessity but, rather, on the ground that defense counsel's conduct made it impossible to proceed without injustice to the state. We disagree. Insofar as the breadth of the trial judge's discretion is relevant to the proper disposition on review, we agree with the opinion of the United States Supreme Court that, when a trial judge orders a mistrial because of "improper and prejudicial remarks" made by the defendant's counsel, the trial judge's determination is entitled to "special respect." *Arizona v. Washington, supra,* 434 US at 510.

decision to terminate the trial was within the realm of sound judicial discretion. A retrial, therefore, is not statutorily or constitutionally barred on the grounds of former jeopardy.

Reversed and remanded with instructions to quash the peremptory writ of mandamus.

**BUTTLER, P. J.,** dissenting.

Although I concur with the majority's holding that mandamus is available under these circumstances, I do not agree that the trial court erred in holding that a mistrial was not necessary in the original trial.

The majority states, correctly, that the test is whether "manifest necessity" required the termination of the original trial before verdict. However, I do not believe that the majority applied that test properly here. As the court pointed out in *State v. Cole,* 286 Or 411, 423, 595 P2d 466, *cert den* 444 US 968 (1979), there are two kinds of necessity in double jeopardy cases involving the granting of mistrials over defense objections— "physical necessity" and the "necessity of doing justice." When, as in *Cole,* the trial is terminated as a result of the illness of the trial judge, the necessity falls in the "extreme end" of the spectrum; in such a case, the trial judge "would be allowed to exercise 'broad discretion' " and a "flexible standard of review" is applicable. 286 Or at 424.

This case is not one of "physical necessity" allowing the trial judge "broad discretion" to which we apply a "flexible standard of review," as the majority appears to hold. Rather, it is claimed to be one in which a mistrial was justified because prejudicial conduct made it "impossible to proceed with the trial without injustice to either the defendant or the State." ORS 131.525(2)(c). In this kind of case, the trial judge's discretion is not so broad, and the prosecutor has a heavy burden to show "manifest necessity" if he is to avoid the bar of former jeopardy. In *Arizona v. Washington,* 434 US 497, 505, 98 S Ct 824, 54 L Ed 2d 717 (1978), the Supreme Court said:

"[I]n view of the importance of the [defendant's] right [not to be put twice in jeopardy] and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate

'manifest necessity' for any mistrial declared over the objection of the defendant."

Here, although I agree that defense counsel's jury type argument was both premature and inappropriate, his questions to the arresting officer were intended to show that the police report stated that defendant was wearing cowboy boots with 1-1/2 inch heels, which might have affected his performance of the field sobriety tests administered by the officer. If the police report showed that fact, and if the prosecutor had not brought that out on direct examination, defense counsel could have argued those facts to the jury. If, on the other hand, the police report did not state that defendant was wearing high-heeled boots, then defense counsel's inappropriate response to the trial judge's question might have worked to the state's advantage and to defendant's disadvantage. Not only was counsel's argument premature, so was the trial judge's granting a mistrial.

In any event, the prosecutor did not carry his "heavy burden" of establishing that it was "impossible to proceed with the trial without injustice * * * to the state," ORS 131.525(2)(c), or the "manifest necessity" of terminating the trial over defendant's objection. An admonishment to defense counsel and an instruction to the jury to disregard counsel's statement would have been sufficient to maintain the balance of justice. The trial court in this proceeding so held, and I would affirm.

Accordingly, I dissent.