Submitted May 30, reversed October 9, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CURTIS BROOKS GILLESPIE, JR.,
*Defendant-Appellant.*

Marion County Circuit Court
17CR00284; A166256

451 P3d 637

Defendant was charged by information with two crimes. During his first trial, two law enforcement officers who were scheduled to testify for the state were called away on law-enforcement business and failed to return from the lunch recess. The state moved for a mistrial, which the trial court granted, over defendant's objection. Defendant later moved to dismiss the information on double jeopardy grounds. The trial court denied the motion, and defendant was subsequently convicted in a second trial. On appeal of the judgment of conviction, defendant challenges the denial of his motion to dismiss, arguing that the mistrial was not justified by manifest necessity and that retrying him therefore violated the double jeopardy protections in the Oregon and federal constitutions. The state concedes the error. *Held*: The Court of Appeals accepted the state's concession. The mistrial was not justified by manifest necessity where the trial court failed to adequately consider reasonable alternatives before declaring a mistrial.

Reversed.

Lindsay R. Partridge, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kyle Krohn, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jennifer S. Lloyd, Assistant Attorney General, filed the brief for respondent.

Before Hadlock, Presiding Judge, and DeHoog, Judge, and Aoyagi, Judge.

AOYAGI, J.

Reversed.

**AOYAGI, J.**

When a trial court orders a mistrial in a criminal case over the defendant's objection, double jeopardy principles preclude a second trial unless the mistrial was the result of "manifest necessity." In this case, defendant's first trial ended in a mistrial after two law enforcement officers scheduled to testify for the state were called to respond to an incident and therefore did not return from the lunch recess. On the state's motion, and over defendant's objection, the trial court granted a mistrial. Defendant subsequently moved to dismiss the information based on double jeopardy. The court denied the motion, and defendant was convicted after a second trial. On appeal of the judgment of conviction, defendant challenges the denial of his motion to dismiss, and the state concedes the error. We accept the state's concession and, accordingly, reverse.[1]

The relevant facts are largely procedural. Defendant was charged by information with driving under the influence of intoxicants, ORS 813.010, and harassment, ORS 166.065. Trial was set for Friday, April 7. On the morning of trial, during *voir dire*, the trial court told prospective jurors that defendant's trial was expected to take one day. A six-person jury was empaneled, consisting entirely of women, which the trial court indicated was highly unusual. The trial began. The court gave preliminary instructions to the jury, and the state and the defense each delivered opening statements. The court then recessed for lunch until 1:15 p.m. The state intended to call up to four witnesses after lunch: Deputy Evarts and Deputy Ramseyer, who participated in defendant's arrest and booking, and defendant's wife and daughter, who were expected to be hostile witnesses.

After the lunch recess ended—and before bringing the jurors back into the courtroom—the trial court went on the record to make a brief statement. It explained that it had been advised over the lunch hour that Evarts and Ramseyer had been called away on law enforcement business and that, consequently, it was going to declare a mistrial:

---

[1] Because we reverse on the first assignment of error, we do not reach defendant's other assignments of error.

"Alright. We're back on the record in State of Oregon v. Gillespie, 17CR00284, and we're gonna bring the jurors in in a moment, and I've been advised over the lunch hour that there was some law enforcement incident, totally and absolutely unrelated to the matter we're trying today, but apparently required the presence of the two deputy sheriffs that were the state's law enforcement witnesses for this case and, for that reason, I am going to declare a mistrial. And I understand the defendant objects to that, and, [prosecutor], I'll let you, once we dismiss the jury, place more information about that on the record, such that you feel like you can, and, [defense counsel], I'll allow you to make a record as well, and I'll address the matter further. But we're gonna bring the jurors in right now and I'm gonna not retain them any longer."

The trial court proceeded to release the jurors and, after doing so, gave the parties the promised opportunity to make a record. The state said that the court had accurately "summarized our conversation in chambers" and moved on the record for a mistrial. Defendant stated his objections to a mistrial. The trial court then granted a mistrial on the record. The court explained that, although it would have preferred to finish the trial, "if the community is benefited overall by the absence of the officers today, then I think, given whatever the circumstances are, that, while it's certainly inconvenient to the Court, but also continues to wear on the Gillespie family, then I'm mindful of that, but weighing that against what the potential issues might be, I think that's the appropriate remedy at this point."

A month after the mistrial, defendant moved to dismiss the information on state and federal double jeopardy grounds. *See* Or Const, Art I, § 12 ("No person shall be put in jeopardy twice for the same offence ***."); US Const, Amend V ("nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb"). Jeopardy attaches when a jury is empaneled, so it was undisputed that jeopardy had attached in the first trial. *Crist v. Bretz*, 437 US 28, 35, 98 S Ct 2156, 57 L Ed 2d 24 (1978). Defendant argued that the mistrial had not been the result of "manifest necessity" and that, as such, retrying him would constitute double jeopardy.

The trial court denied defendant's motion. The court described its options when the deputies did not return from lunch as being (1) "to just simply wait it out," (2) "to excuse the jury and reconvene at a future date," or (3) "to declare a mistrial." The court viewed the first two options as not "appropriate" for what was supposed to be a one-day trial on a Friday, when it was already going to be difficult to finish on time and there was no "indication about how long we should wait." Ultimately, the court said, the "[n]umber one" reason not to wait for the deputies' return or reconvene on a different day was "what we had promised jurors, and not just that we had promised them that it was one day, but then, in *voir dire*, not inquiring as to whether or not they would have any problems being able to serve as a juror if they had to come back on the next week, because that was not in our realm of consciousness at the time we were doing *voir dire*." The court concluded that, under the circumstances, there had been "manifest necessity to declare the mistrial," stating, "when I balance the situation that we have here regarding resetting this trial and the potential need for the officers to provide for community safety, I think it clearly weighs in the favor of deferring to the officers' decisions regarding what would be most appropriate for community safety."

After a second trial, defendant was convicted of both charges. On appeal, he argues that the trial court erred in denying his motion to dismiss. The state concedes the error, but "[w]e are not bound to accept that concession and must decide whether to accept it." *Cervantes v. Dept. of Human Services*, 295 Or App 691, 693, 435 P3d 831 (2019).

In reviewing the denial of a motion to dismiss an indictment or information following a mistrial, we must determine whether granting a mistrial over the defendant's objection "was outside the constitutional bounds of discretion and constituted legal error." *State v. Moore*, 361 Or 205, 221, 390 P3d 1010 (2017). "The dimensions of the guarantee against double jeopardy and the many issues that may arise when the state seeks to reprosecute a defendant are varied and complex," but, "[w]here, as here, a trial court declares a mistrial over a defendant's objection, that decision is examined against the standard of 'manifest necessity.'" *Id.* at 214. That standard applies under both the state and federal

constitutions. *See id*. In accordance with our normal practice, we begin with the state constitution and, because it is determinative, do not reach the federal constitution. *See id*. at 213 ("This court's practice has been to resolve such claims first under state law while giving proper weight to relevant United States Supreme Court opinions that we find persuasive.").

"Manifest necessity" refers to a "'high degree'" of necessity to declare a mistrial. *Id*. at 215 (quoting *Arizona v. Washington*, 434 US 497, 505-06, 98 S Ct 824, 54 L Ed 2d 717 (1978)). The "validity of each 'manifest necessity' ruling depends on the unique circumstances that each case presents." *Id*. We have declined to adopt a rule that "an absence of witnesses can never justify an order of mistrial." *State v. Misten*, 26 Or App 681, 685, 554 P2d 584 (1976). At the same time, we have made clear that "manifest necessity" requires "at the least that a trial not be terminated if any reasonable alternative action is possible under the facts of each case." *State v. Embry*, 19 Or App 934, 942, 530 P2d 99 (1974). The trial court "is not to foreclose the defendant's option to go to the jury unless [it] reasonably concludes the ends of public justice cannot be served by a continuation of the proceedings." *Id*. at 941. It is the state's burden to demonstrate that granting a mistrial "was such a 'manifest necessity' as to justify the dismissal of the jury and avoid the bar of double jeopardy." *Moore*, 361 Or at 207, 214 (quoting *State v. Cole*, 286 Or 411, 424, 595 P2d 466 (1979)).

On this record, we accept the state's concession that the trial court erred in denying defendant's motion to dismiss the information. In declaring a mistrial immediately upon learning of the deputies' absence, the trial court did not adequately consider reasonable alternatives. The court appears to have focused almost entirely on potential inconvenience to the jurors, who had been told that morning that the trial was expected to last one day. Although concern for jurors' schedules is understandable, juror inconvenience does not outweigh the double jeopardy protections afforded to criminal defendants. Of course, juror availability is a different matter than juror inconvenience. If the trial court had determined that defendant's trial could not be finished that day because of the officers' absence *and* that it would

not be possible to reconvene with the same jurors the following week, then the manifest necessity standard might be met. But here, even assuming that the delay caused by the officers' absence after lunch made it impossible to finish defendant's trial that day,[2] the court made no inquiry into the jurors' ability to reconvene later. In explaining its denial of the motion to dismiss, the court indicated that it had not considered it "appropriate" to "reopen *voir dire* and start asking those questions [of] the jurors." However, irrespective of "reopening" *voir dire*, we are aware of no reason—and the state represents that it also is aware of no reason—that the court could not simply have asked the jurors about their availability the following week.

As for the trial court's view that it should "defer" to the deputies' decision whether it was "most appropriate for community safety" to respond to the call or to stay and testify at defendant's trial, defendant correctly notes that "[t]he ultimate issue in this case is not whether the officers were justified in leaving court to respond to [an incident]." The issue is whether the trial court adequately explored all reasonable options for completing the trial, given the officers' sudden absence of unknown duration, and only declared a mistrial once it was evident that doing so was a manifest necessity.

On this record, we cannot say that the "manifest necessity" standard was met.[3] We therefore accept the state's

[2] Before the trial court declared a mistrial, there was no discussion (or at least no discussion on the record) of how long the court might be able to wait for the officers to return before it would become impossible to finish the trial that day. Meanwhile, the court had no information about when the officers might return, although it was later determined during the motion-to-dismiss proceedings that Evarts had finished his duties at the incident scene at 1:45 p.m. and Ramseyer at 2:00 p.m. We need not address whether waiting for the officers to return would have been a reasonable alternative. If so, that would defeat the manifest necessity for a mistrial. If not, there was still the option of reconvening the following week, which the trial court did not adequately explore.

[3] In reaching our decision, we have considered each of the dozen factors suggested by Professor LaFave as potentially relevant to assessing "manifest necessity" for a mistrial. *See Moore*, 361 Or at 215 n 6 (describing the factors listed in Wayne R. LaFave et al, 6 *Criminal Procedure* § 25.2(c) at 799-800 (4th ed 2015) as "instructive"). Because each manifest-necessity case is unique, and the state is not contesting error in this one, we do not believe it would be helpful to the parties, the bench, or the bar to go through those factors in detail here.

concession that the trial court erred in denying defendant's motion to dismiss the information on double jeopardy grounds and, accordingly, reverse the judgment of conviction.

Reversed.