Argued and submitted September 6, 2018, affirmed December 9, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANDREW RYAN DYKSTRA,
*Defendant-Appellant.*

Washington County Circuit Court
16CR50085; A163419

479 P3d 294

After a stipulated-facts bench trial in which the trial court granted the state's motion for a mistrial based on the absence of a written jury waiver, as required by Article I, section 11, of the Oregon Constitution, the state reindicted defendant on the same charges, amending one of them. The trial court found defendant guilty except for insanity on five of the six charges and entered a judgment placing him under the jurisdiction of the Psychiatric Security Review Board. Defendant appeals that judgment, contending, among other assignments of error, that the trial court erred in denying his motion to dismiss the second indictment on double jeopardy grounds. *Held*: Because the absence of a written jury waiver is plain error requiring reversal on appeal, *State v. Barber*, 343 Or 525, 173 P3d 827 (2007), the state established manifest necessity for a mistrial in the first prosecution; consequently, double jeopardy did not bar defendant's prosecution under the second indictment.

Affirmed.

James Lee Fun, Jr., Judge.

Ryan Scott argued the cause and filed the briefs for appellant.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and DeVore, Judge, and Aoyagi, Judge.*

DeHOOG, P. J.

Affirmed.

_____
* DeVore, J., *vice* Hadlock, J. pro tempore.

**DeHOOG, P. J.,**

This appeal requires us to examine the double jeopardy implications of reprosecuting defendant after a stipulated-facts bench trial, in which—after accepting the stipulated facts, finding defendant guilty except for insanity (GEI) on various charges, dismissing other charges, and announcing a sentence—the trial court granted the state's motion for a mistrial based on the lack of a jury waiver. The state then reindicted defendant on the same charges (amending one of them), and, in the second trial, the court found defendant GEI on five of the six charges, including those that the state had agreed to dismiss as part of the earlier stipulated-facts trial. Defendant appeals the judgment in that second case, raising three assignments of error based on double jeopardy principles, namely, that the trial court erred in (1) denying his motion to dismiss the second indictment, (2) not dismissing two counts that had been dismissed on the state's motion in the first trial, and (3) allowing the state to proceed in the second trial on an amended version of one of the counts. With respect to defendant's first assignment of error, we conclude that, because the state established manifest necessity for a mistrial in the first case, double jeopardy does not bar defendant's retrial; the court therefore did not err in refusing to dismiss the indictment in the second case. We reject defendant's second and third assignments of error without written discussion.

The material facts, which are primarily procedural, are undisputed. Defendant was charged, in Case No. C152591CR, with first-degree arson, ORS 164.325 (Count 1)[1]; unlawful possession of methamphetamine, ORS 475.894 (Count 2); attempted assault of a public safety officer, ORS 163.208 (Count 3); resisting arrest, ORS 162.315 (Count 4); recklessly endangering another person, ORS 163.195 (Count 5) and second-degree criminal mischief, ORS 164.354 (Count 6).

---

[1] ORS 164.325 provides, as relevant, that a person commits first-degree arson if, by starting a fire, the person intentionally damages "[p]rotected property of another," ORS 164.325(1)(a)(A), or "[a]ny property, whether the property of the person or the property of another person, and such act recklessly places another person in danger of physical injury or protected property of another in danger of damage," ORS 164.325(1)(a)(B). As relevant, "'[p]rotected property' means any structure, place or thing customarily occupied by people[.]" ORS 164.305(1).

With respect to first-degree arson (Count 1), the indictment alleged:

> "The defendant, or about October 14, 2015, in Washington County, Oregon, did unlawfully and intentionally damage *protected property* at 14256 SW Farmington Road, Beaverton, by starting a fire, thereby recklessly placing protected property of another, located at 14256 SW Farmington Road, Beaverton, in danger of damage."

(Emphasis added.) After "a long course of negotiation," the state and defendant agreed to a stipulated-facts trial as to Counts 1, 4, and 6, with the expectation that the court would find defendant GEI as to those counts, and that the state would dismiss Counts 2, 3, and 5.[2]

Pursuant to their agreement, the parties stipulated to the following facts. Early one morning, defendant leaned a "'Presto' type fire log" against the victims' fence, which is attached to their home. Defendant intentionally ignited the fire log. The fire from the fire log ignited the fence, which allowed the fire to spread towards the victims' home, which is protected property, putting the home in danger of damage. When a police officer contacted defendant shortly after the fire had been extinguished, defendant "became angry and swatted [the officer's] hand and attempted to punch [the officer] in the face." When the officer attempted to arrest him, defendant resisted the arrest "by physically struggling with" the officer. Officers found fire-starting paraphernalia and methamphetamine in defendant's home.

A bench trial was held on July 13, 2016. The parties recited their agreement, and the court admitted the stipulation of facts signed by the parties, along with two psychiatric reports (one offered by the state and one by defendant) reflecting defendant's diagnosis of schizophrenia and the doctors' GEI-related findings. Consistent with the parties' agreement, the state moved to dismiss Counts 2, 3, and 5,

---

[2] The state also agreed to dismiss a separate case, Case No. D152135M (charging interfering with public transportation and theft of services), and, in a probation violation proceeding in another case, Case No. D140575T, to recommend termination of probation as unsuccessful, without imposing sanctions.

and the court granted that request. The state then rested its case, arguing that the evidence was sufficient to find defendant GEI as to the remaining counts.

At that point, defendant moved for a judgment of acquittal on the arson charge, Count 1, arguing that the state had failed to prove that defendant had unlawfully and intentionally damaged "protected property," as alleged in the indictment, because the stipulated facts established that defendant damaged only the fence, which is not protected property under the definition of the offense. The state responded that the first use of the word "protected" in that count was surplusage, which the court had authority to strike by interlineation.[3] Defendant contended that the court lacked that authority because jeopardy had attached when the court received the stipulated facts. The state disagreed. After further argument, the court asked the parties to submit authority for their respective positions and continued with the trial.

The court found defendant GEI on the remaining two undisputed counts (Counts 4 and 6) and indicated that it would find defendant GEI on Count 1 also, assuming it could strike the word "protected" from the indictment. More particularly, the court stated that it would "craft [its] sentence" *assuming* the state was correct about that, but, if the court "change[d its] mind" after reviewing the case law, it would inform the parties by written opinion. The court then proceeded to pronounce sentence on all three counts, placing defendant under the jurisdiction of the Psychiatric Security Review Board (PSRB) for a period of 20 years on Count 1 and for a period of one year each on Counts 4 and 6. It does not appear that any order or judgment memorializing those decisions or the court's earlier dismissal of Counts 2, 3, and 5 was ever entered in the court's register. Defendant filed a written motion for judgment of acquittal (MJOA) on Count 1 the same day.

On July 26, the court reconvened the parties to resolve defendant's MJOA on Count 1 and the issue "whether

---

[3] *See State v. Pachmayr*, 344 Or 482, 185 P3d 1103 (2008) (explaining that Article VII (Amended), section 5, of the Oregon Constitution allows amendments to charging instruments as to form without resubmission to the grand jury).

[the court] was going to strike the word 'protected'" from the indictment. The court told the parties that it was not planning to decide the question, explaining that, since the parties had contemplated a stipulated-facts trial that would result in a GEI sentence, "it seems to this Court that it should be resolved in that manner with an agreement to the sentence that I basically already gave or we should vacate the sentence and have you guys go to trial." The prosecutor then asserted that the trial was invalid in any event because defendant had not submitted a jury trial waiver, necessitating a mistrial. The court and the parties debated the issue further; eventually, the court indicated that, notwithstanding defendant's objection, it was declaring a mistrial, and then set the case over for defense counsel to have time to confer with his client as to how he wanted to proceed.

At a subsequent hearing, on August 5, the court stated that the case was back in a pretrial posture due to the mistrial and allowed defendant to put any objections on the record. Defense counsel argued that returning the case to pretrial status was inappropriate because "double jeopardy attaches upon the tendering and acceptance of stipulated facts." Counsel further argued that, because the mistrial was caused by the state as the result of the state's "direct motion without the consent of the Defense," the state could not retry defendant. Counsel indicated that the problem that the state argued required a mistrial was "easily repaired" because defendant was willing to sign a jury waiver. The state responded that the mistrial was not caused by the state; rather, the lack of a signed jury waiver was "a legal defect that made the trial unlawful." The state also requested that the court rule on its motion to amend the indictment to strike "protected" from Count 1, which it had filed before the hearing. The court declined to rule. Later, the court granted the state's motion to dismiss the indictment in Case No. C152591CR.

The state then obtained a new indictment in Case No. 16CR50085 (the subject of this appeal), charging defendant with the same offenses except that, with respect to Count 1, the indictment now alleged that defendant did

"unlawfully and intentionally damage 'property,' rather than 'protected property.'"[4] A different judge presided.

Defendant filed a motion to dismiss the indictment for subjecting him to double jeopardy under the state and federal constitutions, arguing, among other things, that jeopardy attached at the moment the stipulation of facts was received by the court in the earlier trial.[5] Defendant also argued that jeopardy attached to the counts dismissed on the state's motion at that trial, Counts 2, 3, and 5. As to the implications of the mistrial, defendant reasserted that the state cannot recharge defendant when the state moves for a mistrial it caused, except in the case of "manifest necessity," which was not present here because the lack of a jury waiver was repairable. Finally, defendant argued that contract law barred the state from re-indicting defendant on the previously dismissed charges.

The state responded that the stipulated-facts trial was not valid—and therefore jeopardy had not attached—because defendant had not submitted a written jury waiver, as required under Article I, section 11. The state also argued that the mistrial was justified by manifest necessity and ORS 131.525(1)(b)(B), which provides that a mistrial terminates jeopardy if the trial court finds that termination of the previous prosecution is necessary due to "a legal defect in the proceeding that would make any judgment entered upon a verdict reversible as a matter of law," and there was no authority to suggest that the defect could be repaired by the retroactive submission of a jury waiver. According to the state, the relevant case law also permitted it to modify the charges in the new indictment, as it did with Count 1. As to defendant's contract law argument, the state responded

---

[4] Count 1 of the new indictment alleged:

"The defendant, or about October 14, 2015, in Washington County, Oregon, did unlawfully and intentionally damage property at 14256 SW Farmington Road, Beaverton, by starting a fire, thereby recklessly placing protected property of another, located at 14256 SW Farmington Road, Beaverton, in danger of damage."

[5] The court admitted as an exhibit the transcript of the hearings in that case (Case No. C152591CR), as well as the statement of stipulated facts. The court also took judicial notice of all the pleadings filed in the case.

that, because he failed to submit the jury waiver, defendant "never followed through on his obligation of having a valid bench trial." In summary, the state requested that the court deny defendant's motion, "despite jeopardy attaching," because the court was required to grant a mistrial under the doctrine of manifest necessity.

The court denied defendant's motion to dismiss, reasoning that the lack of a jury trial waiver rendered the stipulated-facts trial a "nullity," as if "it [did] not occur," and, therefore, it "has no effect on a subsequent prosecution." The court expressed some doubt as to whether it was correct to label what had occurred a "mistrial"; however, when defense counsel asked the court to clarify, the court stated, "I suppose if asked, I would say there was manifest necessity." With regard to the charges that had been dismissed on the state's motion in the stipulated-facts trial, the court concluded that neither party was bound by the previous agreement and the state could proceed with those charges.

The case proceeded to a bench trial on the new indictment, defendant having now waived his right to a jury trial. The court ultimately entered a judgment finding defendant GEI on Counts 1, 2, 3, 4, and 6, and placing him on conditional release under the jurisdiction of the PSRB for 20 years as to Count 1, five years as to Count 2, and one year each as to Counts 3, 4, and 6.[6]

Defendant appeals the judgment, raising, as noted above, three assignments of error based on double jeopardy: first, that the trial court erred in denying his motion to dismiss the second indictment; second, that the court erred in refusing to dismiss Counts 2 and 3 of that indictment; and third, that the court erred in permitting the state to proceed to trial on an amended version of Count 1.

With respect to defendant's first assignment, he posits that dismissal of the indictment was required under the doubly jeopardy protections of the Oregon and United States Constitutions because jeopardy had attached to all of the charges when the trial court received the stipulation of

---

[6] The court found defendant not guilty on Count 5, recklessly endangering another person.

facts in the first trial. He also argues that the state lacked authority under ORS 131.525(1)(b)(B) to seek a mistrial because the trial had already proceeded to verdict, and the grounds for mistrial in subsection (1)(b) are limited to events that occur prior to that point; in other words, in defendant's view, under ORS 131.525, a mistrial does not annul jeopardy if, as defendant contends occurred here, the trial court has reached a verdict.[7]

  For its part, the state recognizes that jeopardy generally attaches in a stipulated-facts bench trial when the court accepts the stipulation, *State v. Ellis*, 14 Or App 84, 511 P2d 1264 (1973); however, the state contends that it "does *not* attach if the court accepts the stipulation without obtaining a valid waiver of the right to a jury trial," as required by Article I, section 11, of the Oregon Constitution.[8] (Emphasis in state's brief.) In those circumstances, according to the state, "the trial court lacks authority to *hold a trial* on the stipulation" (emphasis in state's brief) and, therefore, a defendant is not at risk of conviction and the submission of the stipulation of facts is insufficient to place the defendant in jeopardy. The state further contends that, even if jeopardy attached, it was properly terminated under ORS 131.525(1)(b)(B) and the state and federal constitutions by the grant of a mistrial before judgment, under circumstances that constituted manifest necessity.[9] At the very least, in the state's view, the court was not precluded from granting a mistrial under ORS 131.525(1)(b)(B) on the arson charge, because the court's GEI finding on that charge was "expressly a conditional ruling" subject to the court's consideration of defendant's MJOA. We need not resolve the state's first and third arguments, because, as explained below, we agree with the state that, even if jeopardy attached, it was

---

[7] By its terms, ORS 131.525(1), the full text of which is set out below, 307 Or App at 775. does not affirmatively provide authority for mistrial motions. Our recitation of defendant's arguments should not be read to suggest otherwise.

[8] Article I, section, 11, provides, in part, that "any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing."

[9] The state also contends that defendant's contrary view regarding the application of ORS 131.525(1)(b)(B) was not preserved. We discuss that issue below.

properly terminated by the trial court's grant of a mistrial under the constitutional doctrine of manifest necessity.

We begin with the basic legal principles. Article I, section 12, of the Oregon Constitution provides, in part, that "[n]o person shall be put in jeopardy twice for the same offence."[10] Similarly, the double jeopardy provision of the Fifth Amendment to the United States Constitution (applicable to the states through the Due Process Clause of the Fourteenth Amendment, *Benton v. Maryland*, 395 US 784, 794, 89 S Ct 2056, 23 L Ed 707 (1969)), states, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." Although the analysis differs in certain respects not applicable here, the constitutional protection against double jeopardy embodied in the two provisions is, "in principle, the same." *State v. Kimsey*, 182 Or App 193, 201, 47 P3d 916 (2002). It is "designed to spare a criminal defendant the embarrassment, expense, and harassment of being subjected to successive prosecutions for the same offense." *Id.* at 203; *see also Serfass v. U. S.*, 420 US 377, 388, 95 S Ct 1055, 43 L Ed 2d 265 (1975) ("The underlying idea * * * is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense, and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."). As the parties readily acknowledge, in a stipulated-facts trial, jeopardy generally attaches when the defendant enters the stipulation of facts and it is accepted by the court. *Ellis*, 14 Or App at 86; *cf. Serfass*, 420 US at 388 ("In a nonjury trial, jeopardy attaches when the court begins to hear evidence.").

Under both constitutions, double jeopardy principles preclude retrial of a defendant when the trial court grants a mistrial over the defendant's objection, as was the case here, unless the mistrial is the result of "manifest necessity." *State v. Moore*, 361 Or 205, 214, 390 P3d 1010 (2017)

---

[10] The protection against double jeopardy is also set forth in state statute. *See* ORS 131.525(1) (providing that "[n]o person shall be prosecuted twice for the same offense").

(citing *United States v. Perez*, 22 US (9 Wheat) 579, 6 L Ed 165 (1824), and *Arizona v. Washington*, 434 US 497, 98 S Ct 824, 54 L Ed 2d 717 (1978)). The state has the burden of establishing that the trial court's granting of a mistrial was consistent with that standard. *Moore*, 361 Or at 207, 214.

The requirements for manifest necessity are also codified in state statute, ORS 131.525(1). *State v. Cole*, 286 Or 411, 417, 595 P2d 466, *cert den*, 444 US 968 (1979); *see also Moore*, 361 Or at 210 n 2 (noting that "ORS 131.525(1) is, in part, a codification of the test of 'manifest necessity' set forth in" *Perez*). ORS 131.525(1) provides:

"A previous prosecution is not a bar to a subsequent prosecution when the previous prosecution was properly terminated under any of the following circumstances:

"(a)  The defendant consents to the termination or waives, by motion, by an appeal upon judgment of conviction, or otherwise, the right to object to termination.

"*(b)    The trial court finds that a termination, other than by judgment of acquittal, is necessary because:*

"(A)  It is physically impossible to proceed with the trial in conformity with law; or

"*(B)    There is a legal defect in the proceeding that would make any judgment entered upon a verdict reversible as a matter of law;* or

"(C)  Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the state; or

"(D)  The jury is unable to agree upon a verdict; or

"(E)  False statements of a juror on voir dire prevent a fair trial.

"(c)  When the former prosecution occurred in a court which lacked jurisdiction over the defendant or the offense.

"(d)  When the subsequent prosecution was for an offense which was not consummated when the former prosecution began."

(Emphases added.)

Returning to the parties' arguments, as an initial matter, we agree with the state that defendant failed to preserve his appellate contention that ORS 131.525(1)(b)(B) does not apply in this case. On appeal, he argues that the circumstances described in paragraph (b)—in contrast to those set out in paragraphs (a), (c), and (d)—are limited to events that occur prior to verdict, and, because defendant's first trial proceeded to verdict, ORS 131.525(1)(b)(B) does not avoid the bar of double jeopardy in this case. However, he did not make that statutory argument to the trial court.

Nor is any error in that regard plain. *See Ailes v. Portland Meadows Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991) (to qualify for plain error review, among other requirements, the legal "point must be obvious, not reasonably in dispute"). As the state points out, ORS 131.525 (1)(b)(B) references entry of *judgment—i.e.*, retrial is permitted following a mistrial if it is based on "a legal defect in the proceeding that *would make any judgment entered upon a verdict* reversible as a matter of law." Thus, among other plausible readings of the text is that the entry of a judgment—rather than the acceptance of a verdict—is the controlling event. In other words, ORS 131.525(1)(b)(B) could be understood to mean that a mistrial based on a legal defect in the verdict itself terminates jeopardy as long as judgment has not been entered and the defect would result in certain reversal if judgment were entered. *Cf. State v. Vann*, 158 Or App 65, 74, 973 P2d 354 (1999) (trial court erred in denying motion for mistrial after accepting verdict rendered by insufficient number of jurors). Defendant's legal point, therefore, is not obvious, and we decline to review it as plain error.

We turn to defendant's constitutional argument, which he did preserve. Whether defendant was entitled to dismissal on double jeopardy grounds is ultimately a legal question. *Moore*, 361 Or at 211. However, in these circumstances, that is, when "reviewing the denial of a motion to dismiss an indictment *** following a mistrial, we must determine whether granting a mistrial over the defendant's objection 'was outside the constitutional bounds of discretion

and constituted legal error.'"[11] *State v. Gillespie*, 299 Or App 813, 816, 451 P3d 637 (2019) (quoting *Moore*, 361 Or at 221). As mentioned above, under both the federal and state constitutions, "that decision is examined against the standard of 'manifest necessity,'" *Moore*, 361 Or at 214, which is the state's burden to establish, *id.* at 207.

The state contends that a mistrial was manifestly necessary here because defendant had not waived his right to a jury trial—in writing or otherwise—in violation of Article I, section 11 (set out above, 307 Or App at 773 n 8), a defect that would, under *State v. Barber*, 343 Or 525, 173 P3d 827 (2007), result in certain reversal on appeal. In *Barber*, the Supreme Court held that, because of the "unique wording" of Article I, section 11, and the "unique kind of rights" it represents, "[t]here is no waiver of a jury trial unless that waiver is in writing and, without a waiver, [a] defendant should [be] tried by a jury." *Id.* at 530. Thus, absent a written jury waiver, the trial court errs "in going to trial at *all*." *Id.* (emphasis in original). And, the *Barber* court further counseled, an appellate court may not "refuse to recognize the error or, having recognized it, refuse to correct it." *Id.* In other words, proceeding to a bench trial without a written jury waiver is reversible as plain error on appeal. *See, e.g.*, *State v. Herrington*, 283 Or App 93, 387 P3d 485 (2016). Thus, according to the state, the absence of a jury waiver in the stipulated-facts trial was a legal defect constituting manifest necessity for a mistrial.

In response, defendant argues only that we should not reach the question, because, in his view, the trial court "expressly declined to decide whether manifest necessity required a mistrial." We disagree. The issue was fully

---

[11] It is worth noting as we begin this discussion that "[t]he constitutional protection against double jeopardy unequivocally prohibits a second trial following an *acquittal*." *Arizona v. Washington*, 434 US 497, 503, 98 S Ct 824, 54 L Ed 2d 717 (1978) (emphasis added). As the Supreme Court explained in *Arizona*:

"The public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though 'the acquittal was based upon an egregiously erroneous foundation.' *See Fong Foo v. United States*, 369 US 141, 143, 82 S Ct 671, 672, 7 L Ed 2d 629. If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair."

434 US at 503.

briefed and argued before the second trial. And, although the court reasoned that the first trial was a nullity, when pressed, it also concluded that "there was manifest necessity." Accordingly, we proceed to the merits.

Manifest necessity is a "flexible standard"; there is no "mechanical formula" for determining the validity of a manifest necessity ruling. *Illinois v. Somerville*, 410 US 458, 462, 93 S Ct 1066, 35 L Ed 2d 425 (1973). Rather, we look to "the unique circumstances that each case presents," *Moore*, 361 Or at 215, keeping in mind that a "'high degree'" of necessity is required, *id.* (quoting *Arizona*, 434 US at 505-06). One kind of necessity is the "'necessity of doing justice,' which arises from the duty of the court to 'guard the administration of justice' from prejudice[.]" *Cole*, 286 Or at 423 (quoting *State v. Schuler*, 293 NC 34, 235 SE 2d 226, 233 (1977)). In *Perez*, the Court's "fountainhead decision" concerning the Double Jeopardy Clause in this context—that is, where a mistrial is granted over the defendant's objection, *Somerville*, 410 US at 461—the Court explained:

> "[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated."

*Perez*, 22 US (9 Wheat) at 580; *see also Cole*, 286 Or at 417-18 (noting that the Model Penal Code section upon which what is now ORS 131.525(1) is based was an attempt to clarify the manifest necessity test articulated in *Perez*, including "legal necessity" as one of the five general reasons justifying termination of jeopardy). As we observed in *State v. McFerron*, 52 Or App 325, 329, 628 P2d 440, *rev den*, 291 Or 368 (1981), "there can be a conflict between the rights of the defendant and the interest of the public in '*** fair trials designed to end in just judgments ***,' *Wade v. Hunter*, 336 US 684, 689, 69 S Ct 834, 93 L Ed 974 (1949), and the public interest in affording the prosecutor one full, fair opportunity to present his case can be the prevailing interest." (Ellipses in *McFerron*.) *See also State v. Embry*, 19 Or App 934, 941, 530 P2d 99 (1974) ("A trial judge, then, is not to foreclose the defendant's option to go to the jury unless he reasonably

concludes that the ends of public justice cannot be served by a continuation of the proceedings.").

In *Somerville*, 410 US at 464, the Court articulated a "general approach, premised on the 'public justice' policy enunciated in *United States v. Perez*":

> "A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial. *If an error would make reversal on appeal a certainty, it would not serve 'the ends of public justice' to require that the Government proceed with its proof when, if it succeeded before the jury, it would automatically be stripped of that success by an appellate court.*"

(Emphasis added.) The trial court in Somerville declared a mistrial, over the defendant's objection, after concluding that the indictment was insufficient to charge a crime and the defect, as a matter of state law, was not curable by amendment. 410 US at 468. Holding that the mistrial met the manifest necessity requirement, the Court observed that, if a mistrial was not constitutionally available in that situation, "the State's policy [preserving a defendant's right to have prosecution commenced by grand jury action] could only be implemented by conducting a second trial after verdict and reversal on appeal, thus wasting time, energy, and money for all concerned." *Id*. at 469. The Court concluded:

> "The determination by the trial court to abort a criminal proceeding where jeopardy has attached is not one to be lightly undertaken, since the interest of the defendant in having his fate determined by the jury first impaneled is itself a weighty one. Nor will the lack of demonstrable additional prejudice preclude the defendant's invocation of the double jeopardy bar in the absence of some important countervailing interest of proper judicial administration. *But where the declaration of a mistrial implements a reasonable state policy and aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice.*"

*Id*. at 471 (emphasis added; citations omitted).

That is the case here as well. *Barber* establishes that the absence in the record of a written jury waiver requires reversal on appeal. Thus, the trial court reasonably could have concluded that any judgment entered in the stipulated-facts trial would automatically result in reversal of the judgment on appeal (necessitating a new trial) and, consequently, that the "ends of public justice" would be defeated by allowing the proceedings to continue to judgment. Moreover, under the circumstances present here, defense counsel's belated suggestion that defendant was willing to sign a jury waiver did not require the trial court to conclude otherwise and, therefore, deny the state's mistrial motion.

Before we explain why that is so, we first note that, on appeal, defendant does not address "manifest necessity," except, as discussed above, to argue that we should not reach it.[12] In the trial court, however, defendant argued that mistrial was not a necessity; rather, he contended, the lack of a jury waiver was "an easily repaired oversight," because he had offered to sign and submit a jury waiver when the state initially raised the issue. We disagree with defendant's assessment.

First, as defendant acknowledged at oral argument, there is no authority for the proposition that a belated jury waiver could cure the Article I, section 11, violation. Second, defendant never actually tendered a signed jury waiver as to the first trial; only *after* the trial court had granted a mistrial did defense counsel suggest that defendant *would be willing* to sign one, and even then there may have been some question whether defendant had the capacity to sign as promised. Third, though we might posit that, if the trial court had accepted a belated jury waiver at defendant's request, he would have been precluded from challenging the waiver on appeal or in post-conviction proceedings, defendant did not offer such assurances to the trial court as it evaluated whether upholding its verdict would lead to pointless effort and delay. Under those circumstances, the trial court was not required to accept that counsel's offer of a belated jury

_____

[12] Defendant does not, for example, suggest that the legal defect—the lack of a jury waiver—was the result of prosecutorial manipulation or misconduct, which would raise different questions.

waiver would render a mistrial unnecessary. *See Cole*, 286 Or at 424-25 (serious illness of trial judge constituted manifest necessity for mistrial, notwithstanding the possibility of continuing the trial before a different judge; under the "flexible standard of *Arizona*," the state was not required to show that no other judge was available, where nothing in the record showed that defendant would have agreed to a continuation of the trial before another judge); *McFerron*, 52 Or App at 332-33 (manifest necessity satisfied, although trial court had alternative, under the law at the time, of proceeding with 11 jurors; the state was not required to proceed with fewer than the jury of 12 to which it was entitled); *cf. Gillespie*, 299 Or App at 817 (manifest necessity standard not satisfied where trial court did not "adequately consider *reasonable* alternatives" before declaring a mistrial (emphasis added)).

Because the state established manifest necessity for a mistrial in the stipulated-facts trial, we conclude that double jeopardy did not bar defendant's prosecution under the second indictment. We therefore reject defendant's first assignment of error. As noted, we have rejected defendant's other assignments of error without written discussion. Accordingly, we affirm.

Affirmed.